IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Megan Huffman, | ) | C.A. NO. 2:05-2108-DCN-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Sticky Fingers, Inc. and Wedge, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on defendants' Motion to Stay or, in the Alternative, to Dismiss and Compel Arbitration. The record contains a Report and Recommendation ("Report") of the United States Magistrate Judge filed December 20, 2005, recommending defendants' motion be denied. Pursuant to 28 U.S.C. § 636(b)(1), a party may object to a magistrate judge's Report, in writing, within ten days after being served a copy of the Report. Defendants filed timely objections on December 29, 2005.

## I. BACKGROUND

Plaintiff Megan Huffman, brought this action against defendants Sticky Fingers, Inc. and Wedge, Inc. ("Wedge")[1] asserting causes of action for sexual harassment, gender based discrimination, wrongful termination, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII")[2]. During her

---

[1] Sticky Fingers, Inc. and Wedge, Inc. are separate entities, but collectively do business as "Sticky Fingers." Together, Sticky Fingers, Inc. and Wedge, Inc. will be referred to as "defendants."

[2] Matt Lowe, plaintiff's supervisor, was initially named a defendant in this case. On November 16, 2005, counsel for Matt Lowe, for plaintiff, and for defendants stipulated that Matt Lowe would be dismissed with prejudice from the above-captioned action, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

employment at defendants' restaurant, plaintiff alleges she was subject to inappropriate and offensive comments of a sexual nature and unwanted physical contact, which constituted violations of Title VII and eventually resulted in her constructive discharge. The matter before the court is the determination of defendants' motion to stay, pending the outcome of a similar suit filed by plaintiff against Sticky Fingers, Inc., in state court. On December 8, 2005, Judge Mikell A. Scarborough of the Court of Common Pleas for the Ninth Judicial Circuit, Charleston, South Carolina, issued an order denying Sticky Finger, Inc.'s motion to dismiss or compel arbitration on the grounds that the arbitration agreement at issue was not valid. This arbitration agreement is the issue in this case. The question before this court is whether the agreement to arbitrate is valid and applicable to the present litigation.

## II. FACT SUMMARY

The court adopts the magistrate judge's thorough findings of fact, and will only briefly elaborate on certain aspects of those findings. In May 2002, plaintiff applied for employment with the defendant Wedge, Inc., d/b/a/ Sticky Fingers. Upon applying for employment with Wedge at Sticky Fingers, plaintiff signed a "Job Application Agreement to Arbitration of Employment-Related Disputes" (the "Agreement") with Employment Dispute Services, Inc. ("EDSI").[3] This Agreement is required of all applicants applying for employment with Sticky Fingers. Report at 3. Under the

---

[3] Plaintiff signed the agreement to arbitration of employment-related disputes on two separate occasions during the course of her employment. The relevant arbitration clauses of the two agreements were exactly the same. Collectively, the two agreements will be referred to herein as the "Agreement."

2

Agreement, the "potential employer," defined as the "signatory company" or "Company," was deemed the "third party beneficiary" of the Agreement, explained in the Agreement as "someone who benefits legally from a contract between two other parties." Report at 4.

According to the record, plaintiff signed the Agreement on two separate occasions, once on May 21, 2002, and a second time on August 24, 2003. Report at 4. In the Agreement, two signature lines were provided, one for the applicant's signature, and another for the signature of a witness. As expressly stated in the Agreement, "the agreement must be notarized if not witnessed by an Agent of the Company." Despite this requirement, neither Agreement was witnessed by an agent of the "company," and neither was notarized. This line was left blank.

After signing the Agreement in May 2002, plaintiff began working for Sticky Fingers at the Meeting Street location where she allegedly fell target to inappropriate sexual advances from her male supervisor. Report at 5. Shortly thereafter, she was terminated from employment, allegedly because she was distracted from work as a result of her brother's diagnosis with cancer. Report at 5. Plaintiff was later told, however, that her termination was due to her refusal of her manager's sexual advances.

In 2004, plaintiff re-applied for employment with Wedge at Sticky Fingers under the assurance that she would not be subjected to sexual harassment. In conjunction with her new employment, plaintiff signed another copy of the Agreement on March 28, 2004. Report at 5. This copy was substantially the same as that which she had signed in 2002 and also provided that any employment related dispute between plaintiff and defendants

3

could only be brought in the EDSI arbitration forum. As noted, the second signature line was left blank.

During this second period of hire, plaintiff was employed from April 2004 until August 27, 2004, when she quit due to alleged sexual harassment by her supervisor, Matt Lowe. Report at 5. Defendants' request the court to stay this litigation pending resolution of plaintiff's state action, or alternatively, to dismiss this action and compel arbitration pursuant to the Agreement.

### III. STANDARD OF REVIEW

This court must conduct a de novo review of any portion or portions of the magistrate judge's Report to which an objection is made, and may accept, reject, or modify the recommendations contained therein. 28 U.S.C. § 636(b)(1). However, this court need not review any findings or recommendations to which neither party objects. Thomas v. Arn, 474 U.S. 140, 150 (1985). A party's failure to object constitutes an acceptance of the magistrate judge's findings and recommendations. United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984) (adopting interpretation of 28 U.S.C. § 636 which conditions appeal from district court's judgment on magistrate judge's recommendation on party's filing of objections with the district court); Thomas, 474 U.S. at 155 (upholding similar procedural rules). A general objection which is not "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute" is inadequate to obtain district court review. Page v. Lee, 337 F.3d 411, 416 n. 3 (4th Cir. 2003) (quoting United States v. 2121 E. 30th Street, 73 F.3d 1057, 1060 (10th Cir. 1996)).

## IV. ANALYSIS

### A.     Defendants' Objections to the Magistrate's Report

Defendants outline three general grounds for objection to the Report. Each is addressed as follows:

#### i.     Defendants' Motion to Stay

Pursuant to <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976), defendants have filed a motion to stay the federal action pending the outcome of plaintiff's state court action. Defendants object to the magistrate judge's Report recommending that the stay be denied. The Report recommends denying defendants' motion on the basis that the parties and legal theories are not the same. Defendants assert that the parties and the legal theories are *substantially* the same, and thus warrant the issuance of a stay. This court is of the opinion that this action is not substantially the same as the pending state court proceeding and thus should not be stayed.

Generally, the pendency of an action in state court is not a basis to bar a similar proceeding in a federal court. <u>See</u> <u>McLaughlin v. United Virginia Bank</u>, 955 F.2d 930, 934 (4th Cir. 1992) (noting general rule that the "pendency of a state court action is not a basis to bar similar proceedings in a federal court having jurisdiction and that federal courts must hear cases within their jurisdiction."). Pursuant to <u>Colorado River</u>, the Supreme Court emphasizes the duty of federal courts to hear cases within federal jurisdiction, noting that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." <u>See</u> <u>Colorado River</u>, 424 U.S. at 817.

Despite this obligation, however, the Colorado River doctrine recognizes that, in light of a state court's contemporaneous exercise of jurisdiction, a federal court may abstain from jurisdiction when certain exceptional circumstances are present. See id. at 817-18.  This limited application of Colorado River is based on the notion that "it is the Congress that should prescribe the Article III jurisdiction of the federal courts, not individual judges." McLaughlin, 955 F.2d at 935.  Colorado River identified four non-exclusive factors the court may consider in determining whether abstention by the federal court is appropriate.  These four factors include: "1) the preference accorded to the first court assuming jurisdiction over a *res*; 2) the relative inconvenience of the state and federal forums; 3) the need to avoid piecemeal litigation; and 4) the relative order of the state and federal suits." McLaughlin, 955 F.2d at 935 (*citing* Colorado River, 424 U.S. at 818-19).  The Supreme Court subsequently added two additional factors: 5) whether a federal question has been presented in the case, and 6) whether the state court proceedings are adequate to protect the parties' rights.  See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23-27 (1983).  Upon adding these two additional factors to the non-exclusive compilation, the Supreme Court instructed that federal courts were not to use the identified factors as a "checklist," but must balance the weight of each in accordance with the facts of a given case, "with the balance heavily weighed in favor of the exercise of jurisdiction." Id. at 16.

However, before even considering the Colorado River factors in determining whether a stay should issue, it is first necessary to ascertain whether a parallel or duplicative state proceeding exists.  The legal standard to determine whether suits are

parallel for purposes of a stay is not whether the parties and legal theories are identical, but rather, if the parties and legal theories are substantially the same. See New Beckley Mining Corp. v. International Union, 946 F.2d 1072, 1073 (4th Cir. 1991) ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."). In New Beckley, the court held that the actions, although "virtually identical," were not parallel because the remedy sought and the issues raised were not the same. Id. at 1074. Furthermore, although "federal and state actions have similar claims and draw on common events, they are not totally duplicative." See McLaughlin, 955 F.2d 930, 935.

In the case at bar, defendants argue that the parties and legal theories in this case are substantially the same as those in the state court proceeding. Although some of the facts giving rise to these actions are the same, neither the parties nor the legal theories are similar enough to warrant a stay. The federal action names both Wedge, Inc. and Sticky Fingers, Inc. Although Wedge is plaintiff's proper employer, the state court proceeding solely involves Sticky Fingers, Inc.

More significantly, the legal issues are quite different. Defendants assert that the legal theories in the state proceeding are substantially the same as those in the federal suit since plaintiff is seeking relief for wrongful termination in both actions. The state suit alleges assault, battery, wrongful discharge, intentional infliction of emotional distress, interference with potential contractual relations, defamation, negligent hiring, negligent supervision, and negligent retention. The federal suit alleges sexual harassment, gender based discrimination, wrongful termination, and retaliation. Among the various claims

alleged in the state and federal actions, the only common legal cause of action is wrongful discharge or wrongful termination. Plaintiff is not advancing "substantially the same issues in different forums." See New Beckley Mining Corp., 946 F.2d at 1073. Likewise, the substantially different legal theories in the suits do not constitute "exceptional circumstances" under Colorado River. Accordingly, defendants' motion to stay is denied.

### ii.     Defendant's Motion to Dismiss

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). Defendants allege that since plaintiff signed a valid, binding arbitration agreement, this action should be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction and arbitration should be compelled. However, for the reasons set forth below, this court possesses jurisdiction because the Agreement is not valid.

### iii.     Defendants' Motion to Compel Arbitration

The magistrate judge's Report concludes the Agreement is invalid on both contractual grounds and a failure to provide a fair forum for plaintiff to effectively vindicate her rights. Defendants object, asserting that the Agreement is valid and that plaintiff should be required to arbitrate pursuant to the arbitration agreement plaintiff admits she signed.

According to the Federal Arbitration Act ("FAA"), agreements "to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, as a threshold matter, the court

must first determine whether the Agreements signed by plaintiff are valid arbitration agreements and whether these arbitration agreements govern plaintiff's employment with her employer, Wedge.  Where questions regarding substantive bias in the rules governing an Agreement arise, judicial inquiry is warranted.  See Penn v. Ryan's Family Steakhouses, Inc. 95 F. Supp. 2d 940, 947 (N.D. Ind. 2000).  As suggested by the FAA, such inquiry may include an examination of contractual defects under ordinary state law principles governing contract formation, in addition to other grounds existing at law or in equity, such as fraud, duress or unconscionability.  See Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001).  In the instant case, the court finds the Agreement to be invalid.

In determining whether an agreement is valid the court must turn to state law contract principles.  See Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987).  The validity of EDSI's arbitration Agreement was recently visited in thorough detail in Brown v. Ryan's Family Steak Houses, Inc., C.A. No. 2:03-2582 (D.S.C.), and was also litigated in plaintiff's present action in state court, Huffman v. Sticky Fingers, Inc., C.A. No. 05-CP-10-47.  In Brown, Judge Patrick Michael Duffy found the Agreement void.  See Order of Feb. 27, 2004, No. 03-2582.  The Fourth Circuit subsequently upheld Judge Duffy's ruling.  See Brown v. Ryan's Family Steak House, Inc., 113 Fed. Appx. 512 (4th Cir. 2004).  With nearly a thousand pages of documents analyzing the Agreement in the Brown case, the court found the Agreement would fail to compel arbitration under both contractual deficiencies, such as failure to notarize as required by the contract terms, as well as substantive bias in the Agreement's provisions regarding selection of arbitrators

and discovery. Likewise, on December 8, 2005, Judge Mikell R. Scarborough also found the Agreement to be void in plaintiff's state court proceeding against defendant Sticky Fingers, observing analogous defects to those found in the Brown court.

In the instant case, the magistrate judge notes several obstacles to finding that a valid and enforceable arbitration agreement exists. First, the Report maintains that the Agreement is not valid because plaintiff's signature was not witnessed or notarized as mandated by the Agreement. Report at 18-19. Both Judge Duffy and Judge Scarborough concluded the Agreement to be invalid on these grounds. Judge Scarborough noted that Sticky Fingers failed to comply with the terms of the Agreement which it wrote/authored. He further noted that "as the drafters of the contract, Sticky Fingers was in the best position to prevent confusion in the contract's construction and should be the party to suffer from its shortcomings." See Huffman v. Sticky Fingers, No. 05-CP-10-47, at 9. Similarly the Brown court declared that the employers' failure to notarize the contract as required by its own terms served as a great impediment to finding that a valid contract existed. See Brown, at 818.

In the case at hand, the Agreement specifically provides that it must be witnessed by an agent of the company, or by a notary, in order to be deemed valid and enforceable. Neither Agreement was witnessed or notarized. Defendants argue that the requirement that the Agreement be witnessed or notarized is irrelevant to determining the validity of the Agreement, asserting that notarizing or witnessing a signature on a contract is a mechanism for avoiding a forgery claim. Forgery is not at issue, as plaintiff admits she signed each Agreement. Objection at 4, *citing* Travelers Indem. Co. v. Nationwide Mut.

Ins. Co., 227 F. Supp. 958, 964 (W.D. Va. 1964).   Nonetheless, the lack of authorization invalidates the Agreement as the Agreement itself required that the signature of a witness or notary be included.  Thus, in the absence of the required signature of a witness or notary the Agreement lacks validity or enforceability since it is not completed in accordance with the specifications of the drafter.  Applying general state law principles in conjunction with the courts' determinations in Brown and in plaintiff's state court action, the contract was not executed in accordance with the specifications of the drafter, and thus the Agreement is not valid.

Furthermore, as a matter of equity, the parties are hardly in comparable negotiating positions.  Defendants are sophisticated businesses with counsel; plaintiff is a college sophomore.  Defendants, not plaintiff, bear the burden of proving the Agreement valid.  Defendants' failure to ensure the execution of the Agreement met the most basic requirements should not prejudice plaintiff.

The Report also notes the Agreement does not identify the employer.  Relying upon the Fourth Circuit opinion in Brantley v. Republic Mortgage Insurance Co., 424 F.3d 392 (4th Cir. 2005), the magistrate judge determined that Wedge, as a non-signatory to the Agreement, can not be considered a third party beneficiary of the arbitration agreement between plaintiff and EDSI.  Report at 20.  In response, defendants contend that, unlike the Republic case, plaintiff and EDSI expressly intended to provide a benefit to Sticky Fingers.  Defendants support this contention with the fact that the Agreement signed by plaintiff expressly states that Sticky Fingers was the "third party beneficiary" of the Agreement, further explaining that a third party beneficiary is "someone who

11

benefits legally from a contract between two parties." Report at 3-4.  However, the Agreement does not specifically identify the "Company" that is to receive the third party benefit of the Agreement. See Report at 3.  By stating that the "Company and any other successor or assign, its signatory superiors, managers and other agents" are third party beneficiaries of the agreement with EDSI, the Agreement suggests that Wedge and Sticky Fingers are intended to be third party beneficiaries; however, the Agreement neglects to expressly identify the "Company."  See id.  Thus, Sticky Fingers cannot claim that it is a third party beneficiary of the Agreement at issue.  As between the parties, plaintiff should not have to suffer the consequences of the Agreements' ambiguities.

## V. CONCLUSION

For these reasons, the court concludes the Agreement is invalid.  The court need not address the Report's additional considerations in reaching the same conclusion.  It is therefore **ORDERED** that defendants' motion to stay or to dismiss and petition to compel arbitration be **DENIED**.  It is further **ORDERED** that this court retains jurisdiction over the controversy, and refers the matter back to the magistrate judge for further proceedings.

**AND IT IS SO ORDERED.**

_____
 **DAVID C. NORTON**
 **UNITED STATES DISTRICT JUDGE**

**March 31, 2006**
**Charleston, South Carolina**